# THE STATE OF NEW HAMPSHIRE

## SUPERIOR COURT

MERRIMACK, SS.                                                TERM XI9  2008

    I, WILLIAM S. McGRAW, Clerk of the Superior Court of the State of New Hampshire for the County of Merrimack, the same being a court of record having a seal, do hereby certify that I am the lawful custodian of the seal, files, records and proceedings of said Court, and also of the files and records of the Supreme Judicial Court, the Court of Common Pleas, the Superior Court of Judicature, the Circuit Court and the Supreme Court, heretofore existing in said State and that I am by law the proper person to make out and certify copies thereof. And I further certify that  annexed hereto

is a full and true copy of the docket sheet, writ of summons and all other

pleadings filed in the matter of Civil No. 08-C-0040, entitled "Janice A.

Witterschein vs. Orion House, Inc.", entered into the Merrimack County

Superior Court on January 29, 2008, and which has been removed to the

United States District Court for the State of New Hampshire,





AND IT IS SO CONSIDERED.
    In Testimony Whereof, I, in my official capacity, have hereunto set my hand and affixed the seal of said Court, this...4TH...................day of...March...........................A. D., X09.2008

......................................... Clerk.

B&B46577

# INDEX

Janice A. Witterschein ___ vs. ___ Orion House, Inc. ___        08-C-040
                                                                Docket No.

| Document # | Document | Cash $ ............................. | Exhibits ☐ |
|---|---|---|---|
| 1. | 1/29/08 – Unserved Writ of Summons ret: 3/4/08 – Nancy Richards-Stower, Esq. JURY | | |
| 2 | 2/19/08 · Acceptance of Service by col. for def. attorney Debra Weiss Ford | | |
| 3 | 3/3/08 – Special Appearance for defendant Orion House, Inc. by Debra Weiss Ford, Esq. | | |
| 4 | 3/3/08 – Notice of Filing of Notice of Removal to Superior Court | | |
| 5 | 3/3/08 – Notice of Removal | | |
| 6 | 3/4/08 – Copy – Clerk's Certificate | | |

AOC-601-245 (Rev. 12/93)

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW HAMPSHIRE

|  |  |
|---|---|
| Janice A. Witterschein,<br>　　Plaintiff<br><br>v.<br><br>Orion House, Inc.,<br>　　Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

2008 MAR -3 A 8: 47

NH SUPERIOR COURT
MERRIMACK COUNTY
CONCORD, NH

Civil Action No.  1:08-cv-000__-__

### NOTICE OF REMOVAL

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1441 and 1446, Defendant

ORION HOUSE, INC., by and through its attorneys, DEVINE, MILLIMET & BRANCH, P.A.,

hereby removes this action from the Superior Court of the State of New Hampshire, Merrimack

County, to the United States District Court for the District of New Hampshire.  In support of this

Notice of Removal, Defendant states as follows:

　　1.　　By Writ of Summons dated January 25, 2008, and returnable the first Tuesday of

March 2008, in Merrimack County Superior Court, Janice A. Witterschein instituted suit against

Orion House, Inc.  A copy of Plaintiff's Writ of Summons is attached hereto as Exhibit A (a

certified original to be forwarded upon receipt of same from Merrimack County Superior Court).

　　2.　　Pursuant to 28 U.S.C. § 1446(a), this notice of removal is timely filed within

thirty (30) days of February 4, 2008, the date on which Defendant's counsel accepted service of

process on behalf of Defendant.

　　3.　　This Court has original jurisdiction over this action by virtue of federal question

jurisdiction pursuant to 28 U.S.C. § 1331.  Specifically, the Plaintiff alleges failure to pay wages

in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201-216, and NH RSA 275.

4.     As this action could have been commenced in this Court, removal is proper.

28 U.S.C. §1441(a).  Furthermore, this Court may exercise supplemental jurisdiction over the

Plaintiff's state law claims.  See 28 U.S.C. § 1367(a).

5.     The requirements of the removal statute having been met, Defendant's right to

remove is absolute.  1A *Moore's Federal Practice* 0.157 [1-3] p. 44.


                                    Respectfully Submitted,
                                    ORION HOUSE, INC.,
                                    By its attorneys,
                                    DEVINE, MILLIMET & BRANCH, P.A.,


Date:  February 29, 2008          By:    /s/Debra Weiss Ford
                                         Debra Weiss Ford (NHBA No. 2687)
                                         216 Lafayette Road, Suite 103
                                         North Hampton, NH 03862
                                         603.964.4990
                                         dford@devinemillimet.com


<u>Certificate of Service</u>

       I hereby certify that a copy of the foregoing was served via Conventional Filing on:
Nancy Richards-Stower, Esq., 32 Daniel Webster Highway, Suite 7, Merrimack, NH, 03054,
counsel for Plaintiff.

Date:  February 29, 2008                 /s/Debra Weiss Ford
                                         Debra Weiss Ford

# The State of New Hampshire

### SUPERIOR COURT

MERRIMACK COUNTY

( ) COURT
⊠ JURY

### WRIT OF SUMMONS

Janice A. Witterschein
316 North Village Road
Loudon, N.H. 03307

v.

Orion House, Inc.
P.O. Box 25
139 Elm Street
Newport, NH 03773

The Sheriff or Deputy of any County is ordered to summon each defendant to file a written appearance with the Superior Court at the address listed below by the return day of this writ which is the first Tuesday of __March__

__2008__ .

YEAR                  MONTH

The PLAINTIFF(S) state(s):

Please see attached sheets

and the Plaintiff(s) claim(s) damages within the jurisdictional limits of this Court.

_Janice A Witterschein by her attorney Nancy Richardson_

INDORSER (sign and print name)

1-25-08

DATE OF WRIT

### NOTICE TO THE DEFENDANT

The Plaintiff listed above has begun legal action against you. You do not have to physically appear in Court on the return day listed above since there will be no hearing on that day. However, if you intend to contest this matter, you or your attorney must file a written appearance form with the Clerk's Office by that date. (Appearance forms may be obtained from the Clerk's Office.) You will then receive notice from the Court of all proceedings concerning this case. If you fail to file an appearance by the return day, judgment will be entered against you for a sum of money which you will then be obligated to pay.

Witness, ROBERT J. LYNN, Chief Justice, Superior Court.

_William S. McGraw_

William S. McGraw, Clerk
NH Superior Court Merrimack County
PO Box 2880
Concord, NH 03302-2880
(603) 225-5501

_Nancy Richards-Stower_

SIGNATURE OF PLAINTIFF/ATTORNEY

NANCY RICHARDS-STOWER

PRINTED/TYPED NAME

32 Daniel Webster Hwy   Suite 7

ADDRESS

Merrimack  NH 03054   / 603-881-3312

PHONE

STATE OF NEW HAMPSHIRE
SUPERIOR COURT

COUNTY OF MERRIMACK                                    January 2008

Janice A. Witterschein
316 North Village Road
Loudon, N.H. 03307

v.

Orion House, Inc.
P.O. Box 25
139 Elm Street
Newport, NH 03773

## COUNT I. WRONGFUL TERMINATION

1. Plaintiff is an adult female who presently resides at 316 North Village Road, Loudon, N.H. 03307.

2. Upon information and belief, defendant is a not for profit corporation with a principal place of business at 139 Elm Street, Newport, N.H.

3. Defendant provides services to male youths and their families including, in the areas of behavioral problems, school problems and substance abuse.

3. From October 2002, when she was hired as a Residential Counselor, until her wrongful termination on February 16, 2006, at which time she was working as a Case Manager, plaintiff was employed by defendant.

4. In 2003, Plaintiff was a salaried employee, but had no direct supervision over anyone.

5. In 2003, plaintiff often worked in excess of 40 hours per week, some weeks working more than 80 hours and 120 hours per week. Plaintiff was not always paid overtime for these hours.

6. In 2004, sometimes plaintiff worked less than 40 hours per week because (1) her mother was terminally ill and she provided health care and transportation to medical appointments for her mother; and (2) because she was in an abusive relationship with defendant's then past- program director.

7. However, no warnings were issued to her for those weeks when she worked less than 40 hours.

8.   For years, including in 2006, plaintiff's vacation pay was "docked" by defendant's Executive Director, Laurie Larkin.

1

9. In January 2006, plaintiff questioned her direct supervisor, Nina Albano, defendant's Program Director, regarding the legality of "docking" plaintiff's vacation pay.

10. Albano said it was legal and because plaintiff was on salary, stating to the plaintiff words to the effect that "the vacation hours had to be taken for insurance purposes."

11. Plaintiff discussed the pay issue with Albano again, including on February 7, 2006, and asking whether when she worked more than 40 hours per week, if "comp time" or "straight time pay" would be provided, noting that she did not understand how pay could be taken away when she worked less than 40 hours a week, but not provided to her when she worked more than 40 hours a week.  Albano directed her to speak with Executive Director Larkin about these issues.

12. On February 13, 2006, plaintiff met with Executive Director Larkin to ask whether the 13.33 hours of overtime plaintiff had accumulated would be paid as "comp time" or "straight time".  Larkin told the plaintiff that the answer was "neither," because plaintiff was a salaried employee.

13. Plaintiff protested that it was not fair to take away salary for hours not worked, but to not credit her with additional hours worked in other weeks.  Larkin responded, " Give me a break, Jan.  I don't always dock your vacation! I don't do it every time, but perhaps I should now.  I can't believe you are having this discussion with me on a Monday morning!"

14. Plaintiff asked Larkin if her actions were legal and she replied tersely, "Yeah, Jan, it is legal.  Call Joyce and ask her.  She will tell you!" Larkin was apparently referring to Joyce Galloway, who performed bookkeeping services for defendant and its related program,  "Orien Preventative Intervention & Education" ("OPIE").

15.  Plaintiff asked Larkin why she was so defensive and she repeated, "Call, Joyce, she will tell you."

16.  Plaintiff responded that she would call her attorney, instead.

17. Larkin hollered, "Oh, NOW, you're telling me you're going to get an attorney, Jan!"

18. Plaintiff responded, "No, I'm not going to get an attorney, I have an attorney I can ask." To which Larkin retorted, "Whatever, Jan.  I am not having this discussion with you," at which point Larkin left her own office, leaving plaintiff sitting alone in Larkin's office.

19. Later that same day, plaintiff asked for copies of her performance reviews. Reviewing what was provided, she noted that there was no typed review from a "follow up" review she had undergone and she asked Albana (Program Director) for it.

20. In response, Nina Albano, the Program Director said, "Oh, you want that, too?" and returned to plaintiff within a couple of hours with that review document on which Albano had signed plaintiff's name, and Larkin had also dated it. Plaintiff said to Albano, "That is NOT my signature, I can't believe you signed [my name to] this!"

21. On February 14, 2006, plaintiff, in writing, requested a complete copy of her personnel file. Larkin replied that she would do the photocopying. When she returned with copies of documents, plaintiff asked to compare the pile she was handed with the originals in her file.

22. On Thursday, February 16, 2006, Larkin called plaintiff into her office and handed her two checks, stating, " *I am paying you back all vacation time and this week's check; and I am also laying you off, effective, immediately.*"

23. Shocked, plaintiff asked, "*That is it? Are there papers with reasons or something to sign?*"

24. Larkin responded, "*No, we just need your keys and pager. Any questions?*"

25. Stunned, plaintiff asked if she could retrieve her personal belongings from her office.

26. Later, plaintiff asked Albano what would defendant say to the children with whom plaintiff had been working. Albano told plaintiff to tell her what she wanted defendant to say, or, to tell the children, herself. Plaintiff declined because she refused to lie to the children, and it would have upset the children to be told the truth: that plaintiff was fired for questioning illegal payroll practices of defendant.

27. Upon information and belief, the children were told that plaintiff was gone because of "a personality conflict;" and her staff colleagues were told that she "had been laid off."

28. Plaintiff learned that after her complaint about her vacation time being docked, the Treatment Coordinator reported that defendant had returned to him all of his vacation time, also, and that defendant had been docking him. Defendant had told the Treatment Coordinator that they had not known their actions were illegal.

29. A Department of Employment Security employee told the plaintiff that defendant had reported to DES that plaintiff's position had been eliminated for fiscal reasons and because that plaintiff had threatened to sue defendant; i.e., DES personnel had spoken to both Laurie Larkin and Joyce Galloway and that one of them had reported to DES that , "*She [plaintiff] threatened to sue us after questioning her benefits.*"

30. At the time they terminated plaintiff's employment, it had an open and unfilled position for Residential Counselor for which plaintiff was fully qualified and already trained.

31. At the time of her termination, plaintiff was being paid $557.69 per week, plus benefits, including medical insurance, sick days, holiday pay and vacation pay. In addition, plaintiff planned to, and had so informed defendant that she wanted to sign up for the defendant's 401(k) plan, to which defendant was obligated to make contributions on behalf of the plaintiff; and plaintiff planned to return to school by enrolling in Antioch University New England, in Keene, New Hampshire because the defendant had promised to pay half her tuition.   Plaintiff lost this pay and these benefits because of her termination.

32.  It is the public policy of New Hampshire that all pay and benefit rules be clearly published to employees, and that employees be able to question errors in pay practices, be they inadvertent, or purposeful, legal or illegal without retaliation by the employer.

33. It is against the public policy of New Hampshire to retaliate against an employee for questioning the pay practices of her employee.

34. It is the public policy of New Hampshire that an employee can seek legal counsel relative to questions she has about the computation of her wages and benefits without retaliation by the employer.

35. It is against the public policy of New Hampshire for an employer to retaliate against an employee for seeking legal counsel relative to the employer's methods of computing wages and benefits.

36.  It is the public policy of New Hampshire for an employee to sign her own name and date on personnel documents requesting the employee's signature.

37. It is against the public policy of New Hampshire for an employer to forge an employee's name on any document.

38. It is against the public policy of New Hampshire for an employer to retaliate against an employee for protesting the employer's forging of her name on documents.

39.  Defendant terminated plaintiff's employment in material part, because she raised questions about the legality of defendant's wage and benefits computations.

40. Defendant terminated plaintiff's employment, in material part, because she informed defendant she was seeking the advice of counsel relative to her wage and benefits.

41. Defendant terminated plaintiff's employment in material part because she expressed displeasure that the employer had forged her name and date on a personnel document.

42. As the result of her job loss, plaintiff suffered lost wages, lost benefits, loss of enjoyment of life, humiliation, anxiety about her economic situation and related discomfort and she seeks all the remedies available to her in this forum.

43. Because defendant's actions were retaliatory and done with malice, plaintiff seeks enhanced compensatory damages in addition to all other damages available to her in this forum.

## COUNT II: UNPAID OVERTIME

44.     All prior allegations are incorporated by reference.

45.     Plaintiff was paid a salary but was not exempt from overtime.

46     Plaintiff worked over 40 hours on one or more weeks but was not paid time and a half and/or any other remuneration for the overtime worked. This non payment was willful and without good cause under both RSA 275:44, IV and the Fair Labor Standards Act.

47.     Failure to pay overtime for over 40 hours worked violates the wage laws of New Hampshire and the United States including, but not limited to:

a. RSA 279:21, VIII; and

b. the Fair Labor Standards Act, 29 U.S.C. § 201, et sec, including, but not limited to, the overtime provisions of 29 USC 206.

48.     Plaintiff claims all damages available to her

a.     under state law, including, but not limited to, her unpaid overtime, at time and a half, doubled, as liquidated damages and her attorney fees pursuant to RSA 279:29 and RSA 275:44, IV; and

b.     under federal law, including, but not limited to, her unpaid overtime, at time and a half, doubled, due to willfulness, and her attorney fees pursuant to 29 USC 216(b).

## COUNT III: RETALIATION

49.     All prior allegations are incorporated by reference.

50.     Plaintiff was retaliated against because she filed an oral complaint about not being paid her overtime wages.

51     Plaintiff's retaliatory termination was motivated, in principal part, willfully and maliciously and oppressively because of her complaint concerning unpaid overtime wages in violation of 29 USC 215(a)(3).

52.     Plaintiff claims all damages available to her, including, but not limited to, and front pay, punitive damages, compensatory damages and attorney fees pursuant to 29 USC 216(b).

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

|  |  |
|---|---|
| Janice A. Witterschein,<br>    Plaintiff<br><br>v.<br><br>Orion House, Inc.,<br>    Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

2008 MAR -3  A 8: 47

NH SUPERIOR COURT
MERRIMACK COUNTY

Civil Action No.  1:08-cv-000__-__

## <u>NOTICE OF FILING OF NOTICE OF REMOVAL TO SUPERIOR COURT</u>

TO:    William S. McGraw, Clerk
        Merrimack County Superior Court
        P.O. Box 2880
        Concord, NH 03302-2880

Take notice that pursuant to 28 U.S.C. §1446, Defendant ORION HOUSE, INC. has this

day filed in the Clerk's Office of the United States District Court for the District of New

Hampshire, Concord, New Hampshire, a Notice of Removal of this case, as shown by copy

attached, and in accordance with the above statute, the State Court should proceed no further

herein unless and until the case is remanded.

                                          Respectfully Submitted,
                                          ORION HOUSE, INC.,
                                          By its attorneys,
                                          DEVINE, MILLIMET & BRANCH, P.A.,

Date:  February 29, 2008               By:  _____
                                             Debra Weiss Ford (NHBA No. 2687)
                                            216 Lafayette Road, Suite 103
                                            North Hampton, NH 03862
                                            603.964.4990
                                            dford@devinemillimet.com

4

<u>Certificate of Service</u>

    I hereby certify that a copy of the foregoing was served via Conventional Filing on: Nancy Richards-Stower, Esq., 32 Daniel Webster Highway, Suite 7, Merrimack, NH, 03054, counsel for Plaintiff.

Date:   February 29, 2008                      _____

                                              Debra Weiss Ford

THE STATE OF NEW HAMPSHIRE
SPECIAL APPEARANCE/~~WITHDRAWAL~~

COUNTY OF MERRIMACK                                          SUPERIOR COURT

[ ] COURT
[x] JURY
                                                       DOCKET NO. 08-C-040

Janice A. Witterschein                    v.      Orion House, Inc.
316 North Village Road                            139 Elm Street
Loudon, NH 03307                                  Newport, NH 03773


Returnable on the first Tuesday of March 2008

| SPECIAL APPEARANCE | WITHDRAWAL |
|---|---|
| Please enter my special appearance as: | Please withdraw my appearance as: |
| [x] counsel for: <u>ORION HOUSE, INC.</u> | [ ] counsel for: |
| [ ] Pro se | Notice of withdrawal sent to my client(s) on: |
| | At the following address: |

I hereby certify that duplicates of this notice were this day [ ] delivered [x] mailed to:

      Nancy Richards-Stower, Esq.
      32 Daniel Webster Highway, Suite 7
      Merrimack, NH 03054

Date:       February 29, 2008

Signed:     _____
          Debra Weiss Ford

Address:   Devine, Millimet & Branch, P.A.
          216 Lafayette Road, Suite 103
          North Hampton, NH 03862

Telephone:  603.964.4990

NH SUPERIOR COURT
MERRIMACK COUNTY
CONCORD, NH
2008 MAR -3  A 8: 47

THE STATE OF NEW HAMPSHIRE

MERRIMACK, SS.                                                    SUPERIOR COURT

Janice A. Witterschein
316 North Village Road
Loudon, NH 03307

v.

Orion House, Inc.
P.O. Box 25
139 Elm Street
Newport, NH 03773


## ACCEPTANCE OF SERVICE


The undersigned, Debra Weiss Ford, Esq., counsel for Defendant, ORION HOUSE,

INC., hereby voluntarily accepts service of process in the above-entitled matter on behalf of the

Defendant, and waives any and all defenses based on the lack of formalities of service.


Date:   February 5, 2008            _____
                                    Debra Weiss Ford
                                    Devine, Millimet & Branch, P.A.
                                    216 Lafayette Road, Suite 103
                                    North Hampton, NH 03862
                                    603.964.4990



ATTORNEYS AT LAW

February 5, 2008

DEBRA WEISS FORD
603.964.4990
DFORD@DEVINEMILLIMET.COM

Nancy Richards-Stower, Esq.
Law Offices of Nancy Richards-Stower
Suite #7, Harris Pond Office Park
32 Daniel Webster Highway
Merrimack, NH 03054

Re:    <u>Janice Witterschein v. Orion House, Inc.</u>

Dear Nancy:

Thank you for forwarding a courtesy copy of the Writ of Summons in this matter.  As we agreed,
I enclose an Acceptance of Service on behalf of Orion House, Inc.  Thank you.

Sincerely,

Debra Weiss Ford

DWF:ijd

Enclosure

DEVINE, MILLIMET
& BRANCH
PROFESSIONAL
ASSOCIATION

216 LAFAYETTE ROAD
SUITE 103
NORTH HAMPTON
NEW HAMPSHIRE 03862

T 603.964.4990
F 603.964.4997
DEVINEMILLIMET.COM

MANCHESTER, NH
ANDOVER, MA
CONCORD, NH
NORTH HAMPTON, NH

# The State of New Hampshire

**MERRIMACK, SS.**                                      **SUPERIOR COURT**

## RECEIPT OF WRIT

DATE:  January 29, 2008

DOCKET NUMBER:  08-C-040

Janice A. Witterschein

v.

Orion House, Inc.


     The writ in the above-captioned matter was filed with the Clerk of this Court on January 29, 2008 at 8:07 a.m.

     The plaintiff or his/her attorney is to attach a copy of this receipt to identical copies of the original writ and deliver them to the sheriff or other legally authorized entity for service on each named defendant.  Sufficient copies shall be provided to allow for a service copy for each named defendant and a copy for each officer completing service to complete the return.  The return copies shall be filed with the court in accordance with N.H. Superior Court Rule 3.

                           By Order of the Court

                           William S. McGraw, Clerk

# The State of New Hampshire

## SUPERIOR COURT

MERRIMACK COUNTY

( ) COURT

(✗) JURY

### WRIT OF SUMMONS

Janice A. Witterschein
316 North Village Road
Loudon, N.H. 03307

v.

Orion House, Inc.
P.O. Box 25
139 Elm Street
Newport, NH 03773

The Sheriff or Deputy of any County is ordered to summon each defendant to file a written appearance with the Superior Court at the address listed below by the return day of this writ which is the first Tuesday of ___March___,
___2008___ .
YEAR                                                                                                          MONTH

The PLAINTIFF(S) state(s):

Please see attached sheets

NH SUPERIOR COURT
MERRIMACK COUNTY
CONCORD, NH
2008 FEB 19 A 8: 31

and the Plaintiff(s) claim(s) damages within the jurisdictional limits of this Court.

_Janice A Witterschein by her attorney Nancy Richards Stower_
INDORSER (sign and print name)

_1-25-08_
DATE OF WRIT

### NOTICE TO THE DEFENDANT

The Plaintiff listed above has begun legal action against you. **You do not have to physically appear in Court on the return day listed above** since there will be no hearing on that day. However, if you intend to contest this matter, you or your attorney must file a written appearance form with the Clerk's Office by that date. (Appearance forms may be obtained from the Clerk's Office.) You will then receive notice from the Court of all proceedings concerning this case. If you fail to file an appearance by the return day, judgment will be entered against you for a sum of money which you will then be obligated to pay.

Witness, ROBERT J. LYNN, Chief Justice, Superior Court.

_William S. McGraw_
William S. McGraw, Clerk
NH Superior Court Merrimack County
PO Box 2880
Concord, NH 03302-2880
(603) 225-5501

_Nancy Richards-Stower_
SIGNATURE OF PLAINTIFF/ATTORNEY

_NANCY RICHARDS-STOWER_
PRINTED/TYPED NAME

_32 Daniel Webster Hwy   Suite 7_
ADDRESS

_Merrimack  NH  03054_  /  _603-881-3312_
                                              PHONE

STATE OF NEW HAMPSHIRE
SUPERIOR COURT

COUNTY OF MERRIMACK                          January 2008

Janice A. Witterschein
316 North Village Road
Loudon, N.H. 03307

v.

Orion House, Inc.
P.O. Box 25
139 Elm Street
Newport, NH 03773

## COUNT I. WRONGFUL TERMINATION

1. Plaintiff is an adult female who presently resides at 316 North Village Road, Loudon, N.H. 03307.

2. Upon information and belief, defendant is a not for profit corporation with a principal place of business at 139 Elm Street, Newport, N.H.

3. Defendant provides services to male youths and their families including, in the areas of behavioral problems, school problems and substance abuse.

3. From October 2002, when she was hired as a Residential Counselor, until her wrongful termination on February 16, 2006, at which time she was working as a Case Manager, plaintiff was employed by defendant.

4. In 2003, Plaintiff was a salaried employee, but had no direct supervision over anyone.

5. In 2003, plaintiff often worked in excess of 40 hours per week, some weeks working more than 80 hours and 120 hours per week.  Plaintiff was not always paid overtime for these hours.

6. In 2004, sometimes plaintiff worked less than 40 hours per week because (1) her mother was terminally ill and she provided health care and transportation to medical appointments for her mother; and (2) because she was in an abusive relationship with defendant's then past- program director.

7. However, no warnings were issued to her for those weeks when she worked less than 40 hours.

8.  For years, including in 2006, plaintiff's vacation pay was "docked" by defendant's Executive Director, Laurie Larkin.

8.   For years, including in 2006, plaintiff's vacation pay was "docked" by defendant's Executive Director, Laurie Larkin.

9. In January 2006, plaintiff questioned her direct supervisor, Nina Albano, defendant's Program Director, regarding the legality of  "docking" plaintiff's vacation pay.

10. Albano said it was legal and because plaintiff was on salary, stating to the plaintiff words to the effect that  "the vacation hours had to be taken for insurance purposes."

11. Plaintiff discussed the pay issue with Albano again, including on February 7, 2006, and asking whether when she worked more than 40 hours per week, if "comp time" or "straight time pay" would be provided, noting that she did not understand how pay could be taken away when she worked less than 40 hours a week, but not provided to her when she worked more than 40 hours a week.   Albano directed her to speak with Executive Director Larkin about these issues.

12. On February 13, 2006, plaintiff met with Executive Director Larkin to ask whether the 13.33 hours of overtime plaintiff had accumulated would be paid as "comp time" or "straight time".   Larkin told the plaintiff that the answer was "neither," because plaintiff was a salaried employee.

13. Plaintiff protested that it was not fair to take away salary for hours not worked, but to not credit her with additional hours worked in other weeks.   Larkin responded, " Give me a break, Jan.  I don't always dock your vacation! I don't do it every time, but perhaps I should now.  I can't believe you are having this discussion with me on a Monday morning!"

14. Plaintiff asked Larkin if her actions were legal and she replied tersely, "Yeah, Jan, it is legal.   Call Joyce and ask her.  She will tell you!" Larkin was apparently referring to Joyce Galloway, who performed bookkeeping services for defendant and its related program,  "Orien Preventative Intervention & Education" ("OPIE").

15.  Plaintiff asked Larkin why she was so defensive and she repeated, "Call, Joyce, she will tell you."

16.  Plaintiff responded that she would call her attorney, instead.

17. Larkin hollered, "Oh, NOW, you're telling me you're going to get an attorney, Jan!"

18. Plaintiff responded, "No, I'm not going to get an attorney, I have an attorney I can ask." To which Larkin retorted, "Whatever, Jan.  I am not having this discussion with you," at which point Larkin left her own office, leaving plaintiff sitting alone in Larkin's office.

19. Later that same day, plaintiff asked for copies of her performance reviews. Reviewing what was provided, she noted that there was no typed review from a "follow up" review she had undergone and she asked Albana (Program Director) for it.

20. In response, Nina Albano, the Program Director said, "Oh, you want that, too?" and returned to plaintiff within a couple of hours with that review document on which Albano had signed plaintiff's name, and Larkin had also dated it. Plaintiff said to Albano, "That is NOT my signature, I can't believe you signed [my name to] this!"

21. On February 14, 2006, plaintiff, in writing, requested a complete copy of her personnel file. Larkin replied that she would do the photocopying. When she returned with copies of documents, plaintiff asked to compare the pile she was handed with the originals in her file.

22. On Thursday, February 16, 2006, Larkin called plaintiff into her office and handed her two checks, stating, " *I am paying you back all vacation time and this week's check; and I am also laying you off, effective, immediately.* "

23. Shocked, plaintiff asked, "*That is it? Are there papers with reasons or something to sign?* "

24. Larkin responded, "*No, we just need your keys and pager. Any questions?* "

25. Stunned, plaintiff asked if she could retrieve her personal belongings from her office.

26. Later, plaintiff asked Albano what would defendant say to the children with whom plaintiff had been working. Albano told plaintiff to tell her what she wanted defendant to say, or, to tell the children, herself. Plaintiff declined because she refused to lie to the children, and it would have upset the children to be told the truth: that plaintiff was fired for questioning illegal payroll practices of defendant.

27. Upon information and belief, the children were told that plaintiff was gone because of "a personality conflict;" and her staff colleagues were told that she "had been laid off."

28. Plaintiff learned that after her complaint about her vacation time being docked, the Treatment Coordinator reported that defendant had returned to him all of his vacation time, also, and that defendant had been docking him. Defendant had told the Treatment Coordinator that they had not known their actions were illegal.

29. A Department of Employment Security employee told the plaintiff that defendant had reported to DES that plaintiff's position had been eliminated for fiscal reasons and because that plaintiff had threatened to sue defendant; i.e., DES personnel

had spoken to both Laurie Larkin and Joyce Galloway and that one of them had reported to DES that , *"She [plaintiff] threatened to sue us after questioning her benefits."*

30. At the time they terminated plaintiff's employment, it had an open and unfilled position for Residential Counselor for which plaintiff was fully qualified and already trained.

31. At the time of her termination, plaintiff was being paid $557.69 per week, plus benefits, including medical insurance, sick days, holiday pay and vacation pay. In addition, plaintiff planned to, and had so informed defendant that she wanted to sign up for the defendant's 401(k) plan, to which defendant was obligated to make contributions on behalf of the plaintiff; and plaintiff planned to return to school by enrolling in Antioch University New England, in Keene, New Hampshire because the defendant had promised to pay half her tuition.  Plaintiff lost this pay and these benefits because of her termination.

32.  It is the public policy of New Hampshire that all pay and benefit rules be clearly published to employees, and that employees be able to question errors in pay practices, be they inadvertent, or purposeful, legal or illegal without retaliation by the employer.

33. It is against the public policy of New Hampshire to retaliate against an employee for questioning the pay practices of her employee.

34. It is the public policy of New Hampshire that an employee can seek legal counsel relative to questions she has about the computation of her wages and benefits without retaliation by the employer.

35. It is against the public policy of New Hampshire for an employer to retaliate against an employee for seeking legal counsel relative to the employer's methods of computing wages and benefits.

36. It is the public policy of New Hampshire for an employee to sign her own name and date on personnel documents requesting the employee's signature.

37. It is against the public policy of New Hampshire for an employer to forge an employee's name on any document.

38. It is against the public policy of New Hampshire for an employer to retaliate against an employee for protesting the employer's forging of her name on documents.

39.  Defendant terminated plaintiff's employment in material part, because she raised questions about the legality of defendant's wage and benefits computations.

40. Defendant terminated plaintiff's employment, in material part, because she informed defendant she was seeking the advice of counsel relative to her wage and benefits.

41. Defendant terminated plaintiff's employment in material part because she expressed displeasure that the employer had forged her name and date on a personnel document.

42. As the result of her job loss, plaintiff suffered lost wages, lost benefits, loss of enjoyment of life, humiliation, anxiety about her economic situation and related discomfort and she seeks all the remedies available to her in this forum.

43. Because defendant's actions were retaliatory and done with malice, plaintiff seeks enhanced compensatory damages in addition to all other damages available to her in this forum.

## COUNT II: UNPAID OVERTIME

44.     All prior allegations are incorporated by reference.

45.     Plaintiff was paid a salary but was not exempt from overtime.

46     Plaintiff worked over 40 hours on one or more weeks but was not paid time and a half and/or any other remuneration for the overtime worked. This non payment was willful and without good cause under both RSA 275:44, IV and the Fair Labor Standards Act.

47.     Failure to pay overtime for over 40 hours worked violates the wage laws of New Hampshire and the United States including, but not limited to:

a. RSA 279:21, VIII; and

b. the Fair Labor Standards Act, 29 U.S.C. § 201, et sec, including, but not limited to, the overtime provisions of 29 USC 206.

48.     Plaintiff claims all damages available to her

a.     under state law, including, but not limited to, her unpaid overtime, at time and a half, doubled, as liquidated damages and her attorney fees pursuant to RSA 279:29 and RSA 275:44, IV; and

b.     under federal law, including, but not limited to, her unpaid overtime, at time and a half, doubled, due to willfulness, and her attorney fees pursuant to 29 USC 216(b).

5

50.     Plaintiff was retaliated against because she filed an oral complaint about not being paid her overtime wages.

51     Plaintiff's retaliatory termination was motivated, in principal part, willfully and maliciously and oppressively because of her complaint concerning unpaid overtime wages in violation of 29 USC 215(a)(3).

52.     Plaintiff claims all damages available to her, including, but not limited to, and front pay, punitive damages, compensatory damages and attorney fees pursuant to 29 USC 216(b).

# The State of New Hampshire

## SUPERIOR COURT

MERRIMACK COUNTY

( ) COURT

(X) JURY

### WRIT OF SUMMONS

Janice A. Witterschein
316 North Village Road
Loudon, N.H. 03307

v.

Orion House, Inc.
P.O. Box 25
139 Elm Street
Newport, NH 03773

The Sheriff or Deputy of any County is ordered to summon each defendant to file a written appearance with the Superior Court at the address listed below by the return day of this writ which is the first Tuesday of __March__,
__2008__ .
YEAR                                                                                                    MONTH

The PLAINTIFF(S) state(s):

Please see attached sheets

NH SUPERIOR COURT
MERRIMACK COUNTY
CONCORD, NH

2008 JAN 29 A 8: 07

and the Plaintiff(s) claim(s) damages within the jurisdictional limits of this Court.

_Janice A Witterschein by her attorney Nancy Richards Stower_
INDORSER (sign and print name)

_1-25-08_
DATE OF WRIT

### NOTICE TO THE DEFENDANT

The Plaintiff listed above has begun legal action against you. **You do not have to physically appear** in Court on the return day listed above since there will be no hearing on that day. However, if you intend to contest this matter, you or your attorney must file a written appearance form with the Clerk's Office by that date. (Appearance forms may be obtained from the Clerk's Office.) You will then receive notice from the Court of all proceedings concerning this case. If you fail to file an appearance by the return day, judgment will be entered against you for a sum of money which you will then be obligated to pay.

Witness, ROBERT J. LYNN, Chief Justice, Superior Court.

_William S. McGraw_
William S. McGraw, Clerk
NH Superior Court Merrimack County
PO Box 2880
Concord, NH 03302-2880
(603) 225-5501

_Nancy Richards-Stower_
SIGNATURE OF PLAINTIFF/ATTORNEY

NANCY RICHARDS-STOWER
PRINTED/TYPED NAME

32 Daniel Webster Hwy   Suite 7
ADDRESS

Merrimack  NH  03054   / 603-881-3312
PHONE

213-003-5

STATE OF NEW HAMPSHIRE
SUPERIOR COURT

COUNTY OF MERRIMACK                              January 2008

Janice A. Witterschein
316 North Village Road
Loudon, N.H. 03307

v.

Orion House, Inc.
P.O. Box 25
139 Elm Street
Newport, NH 03773

## COUNT I. WRONGFUL TERMINATION

1. Plaintiff is an adult female who presently resides at 316 North Village Road, Loudon, N.H. 03307.

2. Upon information and belief, defendant is a not for profit corporation with a principal place of business at 139 Elm Street, Newport, N.H.

3. Defendant provides services to male youths and their families including, in the areas of behavioral problems, school problems and substance abuse.

3. From October 2002, when she was hired as a Residential Counselor, until her wrongful termination on February 16, 2006, at which time she was working as a Case Manager, plaintiff was employed by defendant.

4. In 2003, Plaintiff was a salaried employee, but had no direct supervision over anyone.

5. In 2003, plaintiff often worked in excess of 40 hours per week, some weeks working more than 80 hours and 120 hours per week.  Plaintiff was not always paid overtime for these hours.

6. In 2004, sometimes plaintiff worked less than 40 hours per week because (1) her mother was terminally ill and she provided health care and transportation to medical appointments for her mother; and (2) because she was in an abusive relationship with defendant's then past- program director.

7. However, no warnings were issued to her for those weeks when she worked less than 40 hours.

8.  For years, including in 2006, plaintiff's vacation pay was "docked" by defendant's Executive Director, Laurie Larkin.

1

9. In January 2006, plaintiff questioned her direct supervisor, Nina Albano, defendant's Program Director, regarding the legality of "docking" plaintiff's vacation pay.

10. Albano said it was legal and because plaintiff was on salary, stating to the plaintiff words to the effect that "the vacation hours had to be taken for insurance purposes."

11. Plaintiff discussed the pay issue with Albano again, including on February 7, 2006, and asking whether when she worked more than 40 hours per week, if "comp time" or "straight time pay" would be provided, noting that she did not understand how pay could be taken away when she worked less than 40 hours a week, but not provided to her when she worked more than 40 hours a week.  Albano directed her to speak with Executive Director Larkin about these issues.

12. On February 13, 2006, plaintiff met with Executive Director Larkin to ask whether the 13.33 hours of overtime plaintiff had accumulated would be paid as "comp time" or "straight time".  Larkin told the plaintiff that the answer was "neither," because plaintiff was a salaried employee.

13. Plaintiff protested that it was not fair to take away salary for hours not worked, but to not credit her with additional hours worked in other weeks.  Larkin responded, " Give me a break, Jan. I don't always dock your vacation! I don't do it every time, but perhaps I should now.  I can't believe you are having this discussion with me on a Monday morning!"

14. Plaintiff asked Larkin if her actions were legal and she replied tersely, "Yeah, Jan, it is legal.  Call Joyce and ask her.  She will tell you!" Larkin was apparently referring to Joyce Galloway, who performed bookkeeping services for defendant and its related program, "Orien Preventative Intervention & Education" ("OPIE").

15. Plaintiff asked Larkin why she was so defensive and she repeated, "Call, Joyce, she will tell you."

16. Plaintiff responded that she would call her attorney, instead.

17. Larkin hollered, "Oh, NOW, you're telling me you're going to get an attorney, Jan!"

18. Plaintiff responded, "No, I'm not going to get an attorney, I have an attorney I can ask." To which Larkin retorted, "Whatever, Jan.  I am not having this discussion with you," at which point Larkin left her own office, leaving plaintiff sitting alone in Larkin's office.

19. Later that same day, plaintiff asked for copies of her performance reviews. Reviewing what was provided, she noted that there was no typed review from a "follow up" review she had undergone and she asked Albana (Program Director) for it.

20. In response, Nina Albano, the Program Director said, "Oh, you want that, too?" and returned to plaintiff within a couple of hours with that review document on which Albano had signed plaintiff's name, and Larkin had also dated it. Plaintiff said to Albano, "That is NOT my signature, I can't believe you signed [my name to] this!"

21. On February 14, 2006, plaintiff, in writing, requested a complete copy of her personnel file. Larkin replied that she would do the photocopying. When she returned with copies of documents, plaintiff asked to compare the pile she was handed with the originals in her file.

22. On Thursday, February 16, 2006, Larkin called plaintiff into her office and handed her two checks, stating, " *I am paying you back all vacation time and this week's check; and I am also laying you off, effective, immediately.*"

23. Shocked, plaintiff asked, "*That is it? Are there papers with reasons or something to sign?*"

24. Larkin responded, "*No, we just need your keys and pager. Any questions?*"

25. Stunned, plaintiff asked if she could retrieve her personal belongings from her office.

26. Later, plaintiff asked Albano what would defendant say to the children with whom plaintiff had been working. Albano told plaintiff to tell her what she wanted defendant to say, or, to tell the children, herself. Plaintiff declined because she refused to lie to the children, and it would have upset the children to be told the truth: that plaintiff was fired for questioning illegal payroll practices of defendant.

27. Upon information and belief, the children were told that plaintiff was gone because of "a personality conflict;" and her staff colleagues were told that she "had been laid off."

28. Plaintiff learned that after her complaint about her vacation time being docked, the Treatment Coordinator reported that defendant had returned to him all of his vacation time, also, and that defendant had been docking him. Defendant had told the Treatment Coordinator that they had not known their actions were illegal.

29. A Department of Employment Security employee told the plaintiff that defendant had reported to DES that plaintiff's position had been eliminated for fiscal reasons and because that plaintiff had threatened to sue defendant; i.e., DES personnel had spoken to both Laurie Larkin and Joyce Galloway and that one of them had reported to DES that , "*She [plaintiff] threatened to sue us after questioning her benefits.*"

30. At the time they terminated plaintiff's employment, it had an open and unfilled position for Residential Counselor for which plaintiff was fully qualified and already trained.

31. At the time of her termination, plaintiff was being paid $557.69 per week, plus benefits, including medical insurance, sick days, holiday pay and vacation pay. In addition, plaintiff planned to, and had so informed defendant that she wanted to sign up for the defendant's 401(k) plan, to which defendant was obligated to make contributions on behalf of the plaintiff; and plaintiff planned to return to school by enrolling in Antioch University New England, in Keene, New Hampshire because the defendant had promised to pay half her tuition.  Plaintiff lost this pay and these benefits because of her termination.

32.  It is the public policy of New Hampshire that all pay and benefit rules be clearly published to employees, and that employees be able to question errors in pay practices, be they inadvertent, or purposeful, legal or illegal without retaliation by the employer.

33. It is against the public policy of New Hampshire to retaliate against an employee for questioning the pay practices of her employee.

34. It is the public policy of New Hampshire that an employee can seek legal counsel relative to questions she has about the computation of her wages and benefits without retaliation by the employer.

35. It is against the public policy of New Hampshire for an employer to retaliate against an employee for seeking legal counsel relative to the employer's methods of computing wages and benefits.

36.  It is the public policy of New Hampshire for an employee to sign her own name and date on personnel documents requesting the employee's signature.

37. It is against the public policy of New Hampshire for an employer to forge an employee's name on any document.

38. It is against the public policy of New Hampshire for an employer to retaliate against an employee for protesting the employer's forging of her name on documents.

39.  Defendant terminated plaintiff's employment in material part, because she raised questions about the legality of defendant's wage and benefits computations.

40. Defendant terminated plaintiff's employment, in material part, because she informed defendant she was seeking the advice of counsel relative to her wage and benefits.

4

41. Defendant terminated plaintiff's employment in material part because she expressed displeasure that the employer had forged her name and date on a personnel document.

42. As the result of her job loss, plaintiff suffered lost wages, lost benefits, loss of enjoyment of life, humiliation, anxiety about her economic situation and related discomfort and she seeks all the remedies available to her in this forum.

43. Because defendant's actions were retaliatory and done with malice, plaintiff seeks enhanced compensatory damages in addition to all other damages available to her in this forum.

## COUNT II: UNPAID OVERTIME

44.     All prior allegations are incorporated by reference.

45.     Plaintiff was paid a salary but was not exempt from overtime.

46     Plaintiff worked over 40 hours on one or more weeks but was not paid time and a half and/or any other remuneration for the overtime worked. This non payment was willful and without good cause under both RSA 275:44, IV and the Fair Labor Standards Act.

47.     Failure to pay overtime for over 40 hours worked violates the wage laws of New Hampshire and the United States including, but not limited to:

a. RSA 279:21, VIII; and

b. the Fair Labor Standards Act, 29 U.S.C. § 201, et sec, including, but not limited to, the overtime provisions of 29 USC 206.

48.     Plaintiff claims all damages available to her

a.     under state law, including, but not limited to, her unpaid overtime, at time and a half, doubled, as liquidated damages and her attorney fees pursuant to RSA 279:29 and RSA 275:44, IV; and

b.     under federal law, including, but not limited to, her unpaid overtime, at time and a half, doubled, due to willfulness, and her attorney fees pursuant to 29 USC 216(b).

## COUNT III: RETALIATION

49.     All prior allegations are incorporated by reference.

50.     Plaintiff was retaliated against because she filed an oral complaint about not being paid her overtime wages.

51      Plaintiff's retaliatory termination was motivated, in principal part, willfully and maliciously and oppressively because of her complaint concerning unpaid overtime wages in violation of 29 USC 215(a)(3).

52.     Plaintiff claims all damages available to her, including, but not limited to, and front pay, punitive damages, compensatory damages and attorney fees pursuant to 29 USC 216(b).